IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **SHAWN DONNELL TAYLOR,** | ) | **CASE NO. 7:11CV00420** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OPINION** |
| vs. | ) | |
| | ) | |
| **SGT. ANGLIN, et al.,** | ) | **By: Glen E. Conrad** |
| | ) | **Chief United States District Judge** |
| **Defendants.** | ) | |

Shawn Donnell Taylor, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that the defendant prison officials violated prison policy and treated Taylor's wife with disrespect while she was visiting with him. Upon review of the record, the court finds that the complaint must be summarily dismissed.

**I**

Taylor alleges the following sequence of events on which his claims are based. Taylor is incarcerated at Keen Mountain Correctional Center ("KMCC"). On July 2, 2011, Taylor's wife, Kristie, and her two children came to KMCC to visit Taylor, as they had done every month for nearly a year. While Kristie was waiting for officers to escort Taylor into the visiting room, Officer Looney, one of the officers posted in the area, told her that she had to sit in the chair directly across from the chair in which Taylor would be sitting. Because Kristie had never been required to sit in this pattern on previous visits, she asked Looney why he was making this requirement on this occasion.

Looney answered, in what she considered a disrespectful tone, "Because I told you so! If you want your visit, you will sit where I tell you to." After hearing Looney's comments to his mother, Kristie's son told her that he did not want to visit his father at the prison any more.

Kristie, quite upset by the incident, asked to speak to Looney's supervisor. At around the same time, officers brought Taylor to the visiting room, and Kristie told him what had happened. When Sgt. Anglin entered the room, Taylor and Kristie told him about Looney's conduct. Anglin immediately agreed that Looney's comments to Kristie were correct. Anglin told her that if she would not sit across from Taylor, she and the children could leave.

Kristie asked to see the written policy requiring this seating pattern in the visiting area, and Anglin said he would show it to her. She told Anglin that such a policy had never been enforced against her on previous visits. Anglin said, "So what?" Again, he told Kristie that if she would not sit across from Taylor, her visit would be terminated.

Later during the visit, Anglin returned to the Taylors' table and showed them the KMCC Offender Visitation Information Brochure. It states that "[a]n offender and his visitor(s) will not be permitted to sit on the same side of the table and cannot move or rearrange the chairs." The Taylors were aware of this policy, but attempted to explain to Anglin that the brochure did not require Kristie to sit across from Taylor and that on previous visits, she had been allowed to sit beside him. Kristie also pointed out to Taylor that several other female visitors in the area were sitting beside the offenders they were visiting. Again, Anglin told Kristie that if she did not sit across from Taylor, she would have to leave.[1]

Kristie and her children remained in the visiting area, but felt that they were being closely watched with "hostility and suspicion" as potential policy violators. Kristie was embarrassed and humiliated by the experience, and Taylor felt powerless to challenge the officers' behavior, because he feared having the visit terminated, receiving a disciplinary charge, and being placed

---

[1] Another officer posted in the visiting area, Officer Barton, observed the disagreement between the Taylors and Sgt. Anglin, but did not intervene in any way or contact a higher ranking officer for assistance, despite the Taylors' demand to see the watch commander.

in segregation. Taylor alleges that video footage of the July 2, 2011 visitation period would indicate that white inmates' white visitors were allowed to sit beside the offenders they were visiting, while Kristie and Taylor, who are African Americans, were required to sit facing each other.

Tayor filed an emergency grievance immediately after the end of the visit, complaining that the officers had violated KMCC policy by being disrespectful to his wife. The responding officer promised that Lt. Fields would be advised of the incident and that it would be investigated. Lt. Fields met with Taylor on July 12, 2011, advising him that after talking with the officers involved, he found no violation of prison policy. He advised Taylor to stop filing complaints about the matter because doing so would hurt only himself.

Nevertheless, Taylor pursued the issue through the prison's grievance process. On July 8, 2011, he filed an informal complaint asserting that no one had shown him a written policy requiring visitors to sit across from inmates. Unhappy with the response, which was another copy of the visitation brochure he had already seen, Taylor filed a regular grievance, explaining the July 2, 2011 incident and demanding that officers "stop making up rules which are being used to racial bias [sic] and intimidate certain visitors and prisoners." The responding officer ruled the grievance "unfounded," based on the visitation brochure. Additional grievances he filed were returned as repetitive. Taylor also asserts that other KMCC inmates have filed grievances about race discrimination and abuse, but have received "meaningless responses to their allegations."

Taylor also believes that officers treated him differently than other inmates on July 2, 2011, in retaliation for past incidents. In 2005, officials accused Taylor of providing another inmate with a homemade knife that was later used to injure a third inmate. After investigation,

Taylor was cleared and transferred to another prison. Officials transferred him back to KMCC in 2010, where staff members told him that he was not safe, that they were going to get him, and that he would end up at Red Onion State Prison, a maximum security facility. In May 2011, Taylor wrote to Harold Clarke, the Director of the Virginia Department of Corrections (VDOC), advising Clarke that he had experienced "racism, corruption and bullying" at KMCC. The VDOC regional director answered the letter on May 19, 2011, advising Taylor that the concerns expressed to Clarke had been "noted."

Based on the July 2, 2011 incident in the visiting room, Taylor claims that (1) officers treated Taylor and Kristie with disrespect and threatened them, in violation of the Eighth Amendment; (2) officers refused to allow Taylor to pursue the prison grievance procedures about the incident, in violation of his due process rights; and (3) officers violated Taylor's right to equal protection. Taylor alleges that the July 2, 2011 incident caused him to suffer humiliation and the loss of his family's respect. As relief in this action, he seeks monetary damages and injunctive relief ordering his transfer away from KMCC.

## II

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This section affords the court authority on which to dismiss summarily as frivolous a claim that has no basis in fact or law. See, e.g., Neitzke v. Williams, 490 U.S. 319, 327 (1989).

**A. Claims on Behalf of Plaintiff's Wife**

As an initial matter, Taylor may not bring claims on behalf of his wife or based on any harm the defendants' actions allegedly caused her. See Hummer v. Dalton, 657 F.2d 621, 625-626 (4th Cir. 1981) (finding that prisoner proceeding pro se may not serve as a "knight errant" for others, but may only seek to enforce his own rights); Inmates v. Owens, 561 F.2d 560, 562 (4th Cir. 1977) (noting that to state civil rights claim, plaintiff must allege facts demonstrating that he himself has sustained, or will sustain, deprivation of right, privilege or immunity secured by the constitution or federal law). See also Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 166 (1972) (a litigant "has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others"). Therefore, all such claims alleging injury to Taylor's wife must be dismissed, pursuant to § 1915A(b)(1), as legally frivolous.

**B. No Right to Visitation**

Neither prisoners nor their would-be visitors have a fundamental constitutional right to prison visitation. White v. Keller, 438 F. Supp. 110, 117 (D. Md. 1977), aff'd, 588 F.2d 913 (4th Cir. 1978). To the extent that some right to physical association survives incarceration, that right may be lawfully restricted or denied altogether through prison regulations rationally related to legitimate penological interests. Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (finding no constitutional infringement where prison policies prevented some inmates from visiting with some relatives, but survived rational basis scrutiny).

To the extent that Taylor raises a constitutional challenge to the officers' adjustment of visitation seating requirements for him and his wife on one occasion, the claim fails. He has no independent right to visitation. Moreover, the court can easily conceive of legitimate penological interests furthered by requiring prisoners and visitors to sit on opposite sides of a

table, such as to prevent prohibited physical contact or passing of contraband from one party to another. Even assuming that Taylor's allegations may present some violation of state prison regulations, such state law issues do not present cognizable claims under § 1983, which was created to vindicate federal rights.[2] See, e.g., Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Therefore, the court will dismiss all claims concerning defendants' regulation of visitation without prejudice, pursuant to § 1915A(b)(1), as frivolous.

## C. Verbal Comments

Allegations that jail officials verbally harassed and abused an inmate are not sufficient to state any constitutional claim. See Henslee v. Lewis, 153 Fed. App'x 179, 179 (4th Cir. 2005) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (finding that allegations of verbal abuse alone do not state constitutional violation). The constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). Thus, a guard's verbal harassment or idle threats to an inmate, even if they cause the inmate fear or emotional anxiety, do not constitute a deprivation of any constitutionally protected right. Id. Under these principles, Taylor's claims based on the officers' allegedly disrespectful or threatening comments do not give rise to any constitutional claim actionable under § 1983 and will be summarily dismissed without prejudice, pursuant to § 1915A(b)(1), as legally frivolous.

## D. No Right to a Grievance Procedure

Inmates do not have a constitutionally protected right to a grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). Moreover, a state grievance procedure does not confer any substantive right upon prison inmates, and therefore, a prison official's failure to comply with the state prison's grievance procedure is

---

[2] Pursuant to 28 U.S.C. § 1367(c), the court declines to exercise supplemental jurisdiction over any claims that Taylor may have under state law, and any such claims in this action will be dismissed without prejudice.

not actionable under § 1983.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Azeez v. De Robertis, 568 F. Supp. 8, 9-11 (N.D. Ill. 1982).

Because Taylor has no constitutional right to a prison grievance procedure, he also has no § 1983 claim arising from the manner in which prison officials addressed his grievances concerning the visitation incident.  He also has no viable § 1983 claim that their alleged misconduct under the grievance procedures constituted interference with his ability to access the court.  The court will summarily dismiss Taylor's claims concerning the grievance process without prejudice, pursuant to § 1915A(b)(1), as legally frivolous.

### E.  No Equal Protection Violation

To succeed on an equal protection claim, a plaintiff must first demonstrate that he or she has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination; once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.  See Morrison v. Garraghty, 239 F.3d 648 (4th Cir. 2001). An inmate's right under the equal protection clause to be protected from racial discrimination may be subject to restrictions that are reasonably related to a legitimate penological interest.  Id..  Moreover, a claim of race discrimination must be supported with specific factual allegations.  "[A]bsent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated." Chapman v. Reynolds, 378 F. Supp. 1137, 1140 (W.D. Va. 1974).  A merely conclusory  allegation of discrimination, without facts supporting the assertion that an officer's conduct was motivated by the litigant's race, is insufficient to state an actionable § 1983 claim.  Id.

Taylor offers no evidence from which one can reasonably infer that the officers involved in the visiting room incident treated Taylor and his wife differently than other inmates and their visitors because the Taylors were African American or out of any other purposeful discriminatory motive. The mere fact that other visitors who happened to be white were not asked to sit opposite their offenders on July 2, 2011, is insufficient to support a claim of race discrimination, on that particular occasion or as an ongoing pattern of racism at KMCC, as Taylor alleges. See Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 270 n. 21 (1977) (finding that statistics of racial disparity may support a race discrimination claim only if such statistics present a "clear pattern, unexplainable on grounds other than race"). Indeed, Taylor himself indicates that although Kristie had visited him regularly for almost a year, the July 2 incident was the only occasion when officers made her sit opposite him. Furthermore, as stated, the practice requiring the inmate and visitor to sit opposite each other is clearly related to legitimate penological interests in preventing contraband from entering the facility and in enforcing limits on types of physical contact permitted. Thus, Taylor's factual allegations are insufficient to support the elements of an actionable equal protection claim, and his assertions of racism are merely conclusory. Accordingly, his equal protection and discrimination claims will be summarily dismissed, pursuant to § 1915A(b)(1).[3]

---

[3] Moreover, Taylor's complaint and other submissions indicate that he did not exhaust administrative remedies as to his current claim that officers treated the Taylors differently during the July 2, 2011 visitation incident because of their race. Although Taylor's informal complaints mention the different treatment of other inmates' visitors, he does not explain in his complaints, regular grievances, or appeals that the other inmates and their visitors were white. His failure to exhaust administrative remedies is an alternative basis for summary dismissal of the race discrimination issue, pursuant to 42 U.S.C. § 1997e(a) (requiring inmates to exhaust available remedies before bringing federal court action concerning prison conditions).

**F.  No Factual Support for Retaliation Claim**

Similarly, Taylor's allegations of retaliation must be dismissed because he alleges no facts in support of this accusation.  See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994) (finding that inmate must present more than conclusory allegations of retaliation).  Taylor does not allege any particular incident or comment that suggests the officers' actions on July 2, 2011 had any connection to Taylor's disciplinary history.  The court will accordingly dismiss Taylor's § 1983 claim of retaliation without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim.  An appropriate order will enter this day.

For the reasons stated, the court dismisses Taylor's § 1983 complaint without prejudice.  The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER:  This 28th day of September, 2011.

          /s/  Glen E. Conrad
    Chief United States District Judge